**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

MATTHEW WHITFIELD,                    )
                                      )
              Plaintiff,              )
                                      )    Case No. _____
       v.                             )
                                      )    JURY TRIAL DEMANDED
COREPOINT LODGING INC., MITESH B.     )
SHAH, JAMES R. ABRAHAMSON,            )
GLENN ALBA, JEAN M. BIRCH, ALAN J.    )
BOWERS, GIOVANNI CUTAIA, ALICE        )
E. GOULD, B. ANTHONY ISAAC, BRIAN     )
KIM, and DAVID LOEB,                  )
                                      )
              Defendants.             )

**COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934**

Plaintiff, by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE OF THE ACTION**

1.      This action stems from a proposed transaction announced on November 8, 2021 (the "Proposed Transaction"), pursuant to which CorePoint Lodging Inc. ("CorePoint" or the "Company") will be acquired by Cavalier Acquisition JV LP ("Parent") and Cavalier Acquisition Owner LP ("Merger Sub").

2.      On November 6, 2021, CorePoint's Board of Directors (the "Board" or "Individual Defendants") caused the Company to enter into an agreement and plan of merger (the "Merger Agreement") with Parent and Merger Sub.  Pursuant to the terms of the Merger Agreement, CorePoint's stockholders will receive $15.65 in cash for each share of CorePoint common stock they own.

3.    On December 17, 2021, defendants filed a proxy statement (the "Proxy Statement") with the United States Securities and Exchange Commission (the "SEC") in connection with the Proposed Transaction.

4.    The Proxy Statement omits material information with respect to the Proposed Transaction, which renders the Proxy Statement false and misleading.  Accordingly, plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Proxy Statement.

## JURISDICTION AND VENUE

5.    This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

6.    This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.    Venue is proper under 28 U.S.C. § 1391(b) because a portion of the transactions and wrongs complained of herein occurred in this District.

## PARTIES

8.    Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of CorePoint common stock.

9.    Defendant CorePoint is a Maryland corporation and a party to the Merger Agreement.  CorePoint's common stock is traded on the New York Stock Exchange, which is headquartered in New York, New York, under the ticker symbol "CPLG."

2

10.     Defendant Mitesh B. Shah is Chairman of the Board of the Company.

11.     Defendant James R. Abrahamson is a director of the Company.

12.     Defendant Glenn Alba is a director of the Company.

13.     Defendant Jean M. Birch is a director of the Company.

14.     Defendant Alan J. Bowers is a director of the Company.

15.     Defendant Giovanni Cutaia is a director of the Company.

16.     Defendant Alice E. Gould is a director of the Company.

17.     Defendant B. Anthony Isaac is a director of the Company.

18.     Defendant Brian Kim is a director of the Company.

19.     Defendant David Loeb is a director of the Company.

20.     The defendants identified in paragraphs 10 through 19 are collectively referred to herein as the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

### *Background of the Company and the Proposed Transaction*

21.     CorePoint is a publicly-traded U.S. lodging REIT focused on the ownership of midscale and upper-midscale select-service hotels.

22.     CorePoint owns a geographically diverse portfolio in attractive locations primarily in or near employment centers, airports, and major travel thoroughfares.

23.     On November 6, 2021, CorePoint's Board caused the Company to enter into the Merger Agreement.

24.     Pursuant to the terms of the Merger Agreement, CorePoint's stockholders will receive $15.65 in cash per share.

25.     According to the press release announcing the Proposed Transaction:

3

CorePoint Lodging Inc. (NYSE: CPLG) ("CorePoint" or the "Company"), a pure play select-service hotel owner strategically focused on the midscale and upper-midscale segments, today announced that it has entered into a definitive agreement to be acquired through a joint venture between affiliates of Highgate and Cerberus Capital Management, L.P. ("Cerberus").

Under the terms of the merger agreement, Highgate and Cerberus will acquire all outstanding shares of CorePoint common stock in an all-cash transaction valued at approximately $1.5 billion based on the $15.65 per share consideration, which reflects the assumption of current net debt and a $160 million buyer liability reserve for the Internal Revenue Service ("IRS") matter detailed below. This price represents a premium of approximately 42% to CorePoint's closing share price on July 13, 2021, the last trading day prior to the Company's public announcement of its strategic alternatives process.

In addition to the $15.65 per share payable in cash at closing, CorePoint stockholders may receive incremental cash consideration per share pending timely resolution of the previously disclosed tax proceedings with the IRS related to an ongoing audit of CorePoint entities, which began prior to the Company's 2018 spin-off from La Quinta Holdings, Inc. The amount of any potential additional cash consideration payable to CorePoint stockholders will be calculated based on the amount, if any, by which the settlement amount is less than a buyer liability reserve of $160 million agreed to by the parties. The Company received a settlement offer from the IRS with respect to the IRS matter on November 5, 2021, and expects to accept that offer and enter into an agreement with the IRS this week. The settlement offer provides for total payments by the Company of approximately $89.6 million plus statutory interest through the date of payment. Pursuant to this settlement offer, the Company estimates the total payment amount pursuant to the settlement will be approximately $155 million. As such, the Company currently expects that the amount of any such additional consideration will likely be approximately $0.10 per share. There can be no assurances that any additional consideration will be received by the Company's stockholders. . . .

Timing and Approvals

The transaction is expected to close in the first quarter of 2022, subject to the approval of CorePoint's stockholders and the satisfaction of other customary closing conditions. There is no financing condition to the transaction.

In connection with the transaction, affiliates of Blackstone Inc. which own approximately 30% of CorePoint's total shares outstanding, have entered into a voting agreement under which they have agreed to vote all of their shares in favor of the transaction.

Upon successful completion of the transaction, CorePoint's common stock will no longer be listed on the New York Stock Exchange, and the Company will be privately owned. . . .

Advisors

J.P. Morgan Securities LLC is serving as lead financial advisor to CorePoint, Hodges Ward Elliott, LLC as co-advisor, and Simpson Thacher & Bartlett LLP as legal counsel to CorePoint.

Deutsche Bank Securities Inc. is serving as financial advisor to Highgate and Cerberus. Additionally, Deutsche Bank and Bank of Montreal provided a debt financing commitment to Highgate and Cerberus on this transaction. Latham & Watkins LLP and Kirkland & Ellis LLP acted as legal counsel to Highgate and Cerberus.

***The Proxy Statement Omits Material Information, Rendering It False and Misleading***

26. Defendants filed the Proxy Statement with the SEC in connection with the Proposed Transaction.

27. As set forth below, the Proxy Statement omits material information.

28. First, the Proxy Statement omits material information regarding the Company's financial projections.

29. With respect to the Company's financial projections, the Proxy Statement fails to disclose: (i) all line items used to calculate the financial projections; and (ii) a reconciliation of all non-GAAP to GAAP metrics.

30. The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion.

31. Second, the Proxy Statement omits material information regarding the analyses performed by the Company's financial advisor, J.P. Morgan Securities LLC ("J.P. Morgan").

32. With respect to J.P. Morgan's Public Trading Multiples analysis, the Proxy Statement fails to disclose the individual multiples and metrics for the companies observed by J.P. Morgan in the analysis.

33.     With respect to J.P. Morgan's Discounted Cash Flow Analysis, the Proxy Statement fails to disclose: (i) the individual inputs and assumptions underlying the discount rates ranging from 9.5% to 10.5%; (ii) the terminal values of the Company; (iii) J.P. Morgan's basis for applying perpetual growth rates ranging from 2.0% to 3.0%; (iv) the Company's net debt; and (v) the number of fully diluted outstanding shares of Company common stock.

34.     When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

35.     Third, the Proxy Statement fails to disclose the terms of Hodges Ward Elliott, LLC's ("HWE") engagement, including: (i) the amount of compensation HWE has received or will receive in connection with its engagement; (ii) the amount of HWE's compensation that is contingent upon the consummation of the Proposed Transaction; (iii) whether HWE has performed past services for any parties to the Merger Agreement or their affiliates; (iv) the timing and nature of such services; and (v) the amount of compensation received by HWE for providing such services.

36.     The omission of the above-referenced material information renders the Proxy Statement false and misleading.

37.     The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's stockholders.

## COUNT I

**Claim for Violation of Section 14(a) of the 1934 Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and CorePoint**

38.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

39.     The Individual Defendants disseminated the false and misleading Proxy Statement,

which contained statements that, in violation of Section 14(a) of the 1934 Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading. CorePoint is liable as the issuer of these statements.

40. The Proxy Statement was prepared, reviewed, and/or disseminated by the Individual Defendants. By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy Statement.

41. The Individual Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

42. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction. In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy Statement and in other information reasonably available to stockholders.

43. The Proxy Statement is an essential link in causing plaintiff to approve the Proposed Transaction.

44. By reason of the foregoing, defendants violated Section 14(a) of the 1934 Act and Rule 14a-9 promulgated thereunder.

45. Because of the false and misleading statements in the Proxy Statement, plaintiff is threatened with irreparable harm.

## COUNT II

### Claim for Violation of Section 20(a) of the 1934 Act
### Against the Individual Defendants

46.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

47.     The Individual Defendants acted as controlling persons of CorePoint within the meaning of Section 20(a) of the 1934 Act as alleged herein.  By virtue of their positions as officers and/or directors of CorePoint and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

48.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

49.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same.  The Proxy Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction.  They were thus directly involved in the making of the Proxy Statement.

50.     By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the 1934 Act.

51.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act.  As a direct and proximate result of defendants' conduct, plaintiff is threatened with irreparable harm.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff prays for judgment and relief as follows:

A.     Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B.     In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C.     Directing the Individual Defendants to disseminate a Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.     Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E.     Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

F.     Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby requests a trial by jury on all issues so triable.

Dated: January 6, 2022                                      **RIGRODSKY LAW, P.A.**

                                        By:  */s/ Gina M. Serra*
                                             Seth D. Rigrodsky
                                             Timothy J. MacFall
                                             Gina M. Serra
                                             Vincent A. Licata
                                             825 East Gate Boulevard, Suite 300
                                             Garden City, NY 11530
                                             Telephone: (516) 683-3516
                                             Email: sdr@rl-legal.com
                                             Email: tjm@rl-legal.com
                                             Email: gms@rl-legal.com
                                             Email: vl@rl-legal.com

                                             *Attorneys for Plaintiff*